IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RALPH ENDLICH,**

      **Plaintiff,**

vs.                                       No. CIV 04-265 LCS/KBM

**YELLOW CORPORATION a/k/a**
**YELLOW TRANSPORTATION, INC.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Yellow Roadway Corporation's Motion for Summary Judgment (Doc. 29), filed February 14, 2005. The Court, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), and having reviewed the Motions and considered the submissions of counsel, relevant authorities, and being otherwise fully advised, entered an Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, (Doc. 39) on April 7, 2005. The Court now enters this Memorandum Opinion and Order to fully outline its ruling.

      **I.**      **Procedural History**

This action arises out of the termination of Plaintiff's probationary employment by Defendant. Mr. Endlich submitted an application for employment as a linehaul driver with Defendant Yellow Roadway Corporation on September 9, 2002. (Pl. Ex. 2). In this application, Mr. Endlich indicated that he had not been involved in any work-related incidents causing damage to facilities, equipment, property, or other persons in the ten years prior to the application date. (Id.) Plaintiff had been in an accident as a passenger on January 25, 2001 while working for his

previous employer, Consolidated Freightways. (Def. Ex. 10). Plaintiff underwent surgery for injuries sustained in this incident and sought and was awarded workers' compensation benefits by the Texas Workers' Compensation Commission (TWCC). (Pl. Ex. 1).

After filing his application with Defendant, Plaintiff underwent a pre-employment physical and a physical performance test on September 25, 2002. (Def. Ex. 2, 3). Plaintiff passed the physical performance test administered by Defendant. (Def. Ex. 3, Pl. Ex. 2). Defendant asserts that Plaintiff indicated in his application that he had no physical limitations and that he needed no accommodations as a result. (Def. Ex. 2, 4). Plaintiff contends he informed Defendant's examining physician about his shoulder injury during his physical and that the physician indicated this injury would not prohibit Mr. Endlich from performing services for Defendant. (Pl. Ex. 2, Endlich Depo).

Defendant's labor and employment counsel, Matt Brazeal, received a letter from Todd Richards, an attorney representing Mr. Endlich's previous employer, on October 15, 2002, requesting copies of Plaintiff's application documents, particularly those dealing with any physical performance tests. (Def. Ex. 5). Mr. Richards' letter indicated Plaintiff had filed a workers' compensation claim as a result of the January 25, 2001 incident and that the decision of the TWCC to award benefits was being appealed. (Id.) Mr. Brazeal informed Mr. Richards he would be unable to produce the requested documents without a subpoena. (Def. Ex. 9).

Defendant contends Mr. Brazeal then determined the information on Mr. Endlich's application for employment was false, given Plaintiff's failure to disclose the January 25, 2001 accident (Def. Ex. 6) and that he had made false representations to the TWCC because Mr. Endlich had been working for Yellow Freight with no apparent difficulty and because Plaintiff had

passed his physical performance test. (Def. Ex. 8). Defendant states Mr. Brazeal communicated these concerns to Matt Oglesby, Defendant's labor manager, who in turn contacted the Albuquerque terminal to inform them that Mr. Endlich's application did not "check out." (Def. Ex. 11).

Defendant contends Plaintiff was then terminated for making false statements on his application and for unsatisfactory job performance. (Id.) Plaintiff disputes the contention that he made false statements on his application and instead contends he was terminated because of a perceived disability in violation of 28 U.S.C. § 12112(a) and because of an impermissible inquiry into his medical history. (First Am. Compl. ¶ 7). Plaintiff also contends he was discharged because he had instituted proceedings to obtain workers' compensation benefits against his former employer, in violation of New Mexico law. (Id. at ¶ 8).

**II.    Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The Movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the Movant meets its burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

**III.   Analysis**

**A.   Discrimination under the Americans with Disabilities Act**

Defendant contends that Plaintiff cannot prevail on his claim of discrimination under the ADA because he has failed to establish that he was disabled at the time of his termination. (Doc. 30). Defendant further states that, even after learning Plaintiff had filed a workers' compensation claim, it still did not consider him to be disabled within the meaning of the ADA. (Id.) Defendant also contends Plaintiff cannot recover under the ADA because he cannot establish that he was terminated due to an impermissible medical inquiry. I find Defendant's arguments to be persuasive.

In evaluating Plaintiff's claims, I first examine the manner in which a Plaintiff may typically qualify for relief under the ADA. Generally, the Plaintiff must establish that: 1) he is a disabled person within the meaning of the ADA; 2) he is qualified to perform the essential functions of the job, with or without accommodation; and 3) the employer terminated employment under circumstances which give rise to an inference that the termination was based on the disability.

4

*Bones v. Honeywell International, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004). Plaintiff however does not argue the he is disabled within the meaning of the ADA and, in fact, contends that he was not disabled during the time of his probationary employment with Defendant.

      **i.**        **"Regarded As" Disabled under the ADA**

Plaintiff does however argue that Defendant regarded him as being disabled. Within the meaning of the ADA, the term "disability" includes, "being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. *Epps v. City of Pine Lawn*, 353 F.3d 588, 592 (10th Cir. 2003). 42 U.S.C. § 12102(2)(A). A substantial limitation of the major life activity of "working" means that an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff claims Defendant regarded him as substantially limited in the major life activity of working. In "regarded as" actions, the plaintiff must show that the employer, "entertained misperceptions about the individual-it must have believed either that one had a substantially limiting impairment that one did not have or that one had a substantially limiting impairment when, in fact, the impairment was not so limiting." *Epps*, 353 F.3d at 592 (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

In the present case, Defendant has provided the Court with a rationale for terminating Plaintiff's employment, namely that Plaintiff was dishonest in his employment application and that Plaintiff's performance was unsatisfactory. (Doc. 29). Plaintiff must therefore show that a genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). Summary judgment is proper if a plaintiff fails to establish any element of his prima facie case. *Id.* (citing *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998); *See*

*also, Celotex*, 477 U.S. at 323-224.  Summary judgment is appropriate on Mr. Endlich's "regarded as" claim because he has failed to show that Defendant perceived him to be disabled within the meaning of the ADA.  *See* 29 C.F.R. § 1630.2(j)(3)(i).  Plaintiff has presented no evidence that Defendant believed he had a substantially limiting impairment or "regarded" him as having a disability.  As such, Plaintiff has not shown that a genuine issue of material fact exists on this point, and summary judgment will be granted in favor of Defendant.

### ii. Impermissible Questions under the ADA

Plaintiff further argues that a genuine issue of material fact exists as to whether Defendant terminated his employment because of his responses to questions which an employer is prohibited from asking under the ADA.  The ADA prohibits employers from asking a job applicant "whether such applicant is an individual with a disability, or as to the nature or severity of such disability."  42 U.S.C. § 12112(d)(2)(A).  An employer may however make preemployment inquiries as to the ability of an applicant to perform job-related functions.  § 12112(d)(2)(B).  A plaintiff's ability to maintain an ADA claim based on an impermissible inquiry does not require him to prove that he is an individual with a disability.  *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 593 (10th Cir. 1998).

The question then, is whether Defendant asked Plaintiff prohibited questions under the ADA.  Plaintiff points to three questions which he feels were impermissible: 1) "During the past ten years, have you been involved in any work-related incident(s) which caused damage to facilities, equipment, property, or other persons?" (Pl. Ex. 2, at 1);  2) "How many days of work did you miss in the last three years due to reasons other than paid holidays and vacations?" (Id.); and 3) "For any illness or injury in the last five years, indicate onset date, diagnosis, treating physician's name and address and any current limitation.  List all medications used regularly or

6

recently." (Id. at 5).

It does not appear that the first two questions are impermissible on their face. *See* 42 U.S.C. § 12112(d)(2)(A). Neither question involves an inquiry into whether Plaintiff was an individual with a disability, or as to the nature and severity of such disability within the meaning of the statute. *Id*. Plaintiff asks the Court to infer that Defendant wanted him to disclose any workers' compensation claims by posing these questions on the application. As support for this inference, Plaintiff points to the fact that he was terminated soon after Defendant learned he had filed a workers' compensation claim. In the absence of an improper question however, the temporal proximity of the termination is irrelevant.[1] Because Plaintiff has not provided the Court with a rationale for drawing the proposed inference about workers' compensation claims, he has failed to raise a genuine issue of material fact as to whether the questions were improper and summary judgment is therefore appropriate.

Turning to the third question outlined by Plaintiff, an employer may question a potential employee about any limitations which may prevent him from performing a certain job. 42 U.S.C. § 12112(d)(2)(B). Yet Plaintiff argues this question was impermissible because it led Defendant to regard him as having a disability, for which he was subsequently terminated. However, as discussed *supra*, Plaintiff has provided no evidence that Defendant ever believed he had an impairment which substantially limited his ability to perform a major life activity. Because

---

[1] If a proper question is posed on a job application, the applicant lies in his response, the employer subsequently learns of the dishonest response and immediately fires the employee, this termination is not impermissible under the ADA solely because of its close temporal proximity. If, for example, an applicant was questioned as to his eye color and responded that his eyes were brown, when in fact they were blue, and he was fired the following day for lying on his application, this would not lead to a finding that the employer had violated the ADA. As the question is not impermissible, the fact that the employee was fired soon after the employer learned the true answer to the question is irrelevant.

7

Plaintiff was not "regarded as" disabled, question #3 falls squarely within § 12112(d)(2)(B) and does not constitute an impermissible inquiry. Plaintiff has not shown a genuine issue of material fact exists either that he was "regarded as" disabled under the ADA or that Defendant posed impermissible questions in violation of the ADA. As such summary judgment is appropriate and will be granted on Plaintiff's ADA claims.

### b. Wrongful Discharge under New Mexico Law

Defendant next argues that summary judgment should be granted on Plaintiff's claim for retaliation in violation of Section 52-1-28.2 NMSA (1978). I find that Defendant's Motion for Summary Judgment on this claim should be denied. Section 52-1-28.2 provides in part:

> An employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers' compensation benefits.

A New Mexico court does not appear to have construed Section 52-1-28.2 with respect to the situation in this case: retaliation for filing a workers' compensation claim against a previous, rather than a current, employer. Defendant urges that summary judgment be granted on the retaliatory discharge claim because the statute was not meant to protect Plaintiff's conduct. However, I do not find that this situation falls outside the plain meaning of the statute.

Section 52-1-28.2 does not specify that an employee must be seeking workers' compensation benefits against the retaliating employer in order to come within the ambit of the statute. It appears that Plaintiff's claims fall within the four corners of Section 52-1-28.2 and because the Defendant has not provided the Court with authority to the contrary, summary judgment is inappropriate.

8

Defendant further argues that Plaintiff cannot succeed on a claim of retaliatory discharge based on the common law. In order to establish a claim for wrongful discharge in New Mexico, a claimant must establish: 1) that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn; and 2) that there is a causal connection between the actions and the retaliatory discharge by the employer. *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647 (1989).

Defendant contends that Plaintiff's actions in filing his workers' compensation claim were not encouraged by public policy because Plaintiff allegedly made inaccurate representations concerning his alleged disability. I do not find this argument persuasive. The filing of a workers' compensation claim is an activity encouraged by public policy. Further, Defendant claims it terminated Plaintiff because of false representations made on his employment application, while Plaintiff claims he was terminated in retaliation for filing a workers' compensation claim. Because a genuine issue of fact exists as to whether retaliation occurred, summary judgment is not appropriate on this claim.

The question therefore becomes whether a causal connection exists between Plaintiff's filing and the alleged retaliation. Defendant argues that it terminated Plaintiff because he was dishonest on his application, because he appeared to be misrepresenting his injury to the TWCC and because his job performance was unsatisfactory. Plaintiff however points to several sources, including the deposition of Dennis Deck, in which Mr. Deck indicated that a history of workers' compensation claims would be a factor in the hiring process. (Deck Depo. pp. 53-4). Further, Mr. Brazeal indicated that he believed Plaintiff had been dishonest because he had not reported

being involved in the Jaunary 25, 2002 incident.  (Brazeal Depo. p. 54).  Mr. Brazeal stated he believed at the time that Mr. Endlich had been the driver at the time of the accident.  (Id.)  Mr. Brazeal's notes, after speaking with Mr. Richards about the workers' compensation claim, read, "suspicious work comp. claim . . . sounds like fraud . . .based on purported fraud and falsification, need to recommend disqualification."  (Pl. Ex. 3).  Given these statements, I find that a genuine issue of material fact exists as to whether Plaintiff was terminated for filing his workers' compensation claim.  As such, summary judgment on this claim is inappropriate and is hereby **DENIED**.

        c.      **Exercise of Supplemental Jurisdiction**

Having determined that summary judgment should be granted on Plaintiff's federal claims, I must determine whether it is appropriate for this Court to retain supplemental jurisdiction over the matter.  The exercise of supplemental jurisdiction is discretionary.  *New Mexico v. General Electric Co.*, 335 F.Supp.2d 1157, 1176 (D.N.M. 2003) (citing *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997)).  A federal district court may decline to exercise supplemental jurisdiction over a state law claim if: 1) the claim raises a novel or complex issue of State law; 2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, 3) the district court has dismissed all claims over which it has original jurisdiction, or 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c) (2000).

Although a district court may decline to exercise supplemental jurisdiction after all federal claims have been dismissed, such action is not required.  *United International Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000)("[A] district court has the

constitutional power to exercise supplemental jurisdiction over state claims even after a federal claim has been dismissed, provided the federal claim was not insubstantial from the outset."). The factors a court should weigh in determining whether to retain supplemental jurisdiction over state law claims include, "judicial economy, convenience, fairness and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

In the present case, discovery concluded some time ago and motions have been made with respect to all of Plaintiff's claims. This matter is set for trial beginning on May 31, 2005. Judicial economy would therefore not be served by permitting this matter to be revived in state court. Further, fairness is not served by rejecting supplemental jurisdiction after substantial expenditures of time and money have been made in preparing the dependent claims and it would be more convenient for the parties to have their claims resolved now. Finally, deciding the claims now would not breach the comity owed to the state courts because the disposition of these claims is clear. Thus, all factors favor retention of supplemental jurisdiction over the state law claims.

### Conclusion

Upon review of the evidence presented in this Motion for Summary Judgment, I have determined that Defendant is entitled to judgment as a matter of law on Plaintiffs' ADA claims. Accordingly, Defendant's Motion for Summary Judgment on this claim shall be **GRANTED**. I further find that genuine issues of material fact remain on Plaintiff's claims for wrongful discharge. As such, Defendant's Motion for Summary Judgment on this claim is **DENIED.**

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**